Sean M. Carroll (SBN 027171)
Christopher T. Curran (SBN 032583)
**CLARK HILL PLC**
14850 N Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Email: scarroll@clarkhill.com
ccurran@clarkhill.com
*Attorneys for Defendant J.S. Held LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jeffrey Ward,<br><br>Plaintiff,<br><br>v.<br><br>Travelers Personal Insurance Company, a Connecticut corporation; J.S. Held, LLC, a Delaware limited liability corporation; and David Loucado and Jane Doe Loucado, husband and wife,<br><br>Defendants. | Case No.: 2:20-cv-01079-SPL<br><br>**DEFENDANT J.S. HELD LLC'S MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

## I. INTRODUCTION

Pursuant to Fed.R.Civ.P. 12(b)(6), Defendant J.S. Held LLC ("J.S. Held") requests the Court dismiss the Complaint filed by Plaintiff Jeffrey Ward ("Plaintiff") as against it. Plaintiff's lone claim for aiding and abetting insurance bad faith against J.S. Held – an appraisal firm that was hired by Defendant Travelers Personal Insurance Company ("Travelers") to appraise alleged hail damage at Plaintiff's home is a bridge too far and unsupported by Arizona law. J.S. Held cannot be liable for aiding and abetting alleged bad faith –a decision squarely within Travelers' purview– when all it did was act as an

agent to perform an analysis of Plaintiff's alleged damage at the house so that Travelers could make its own decision on coverage. *See* Complaint at ¶¶ 91-98. J.S. Held had no role or ability to determine whether the insurance policy afforded Plaintiff coverage or to what extent. In fact, the Complaint does not even allege that J.S. Held was aware of the content or terms of Plaintiff's insurance policy. Accordingly, even apart from its facial absurdity, Plaintiff's bare pleading of its claim is insufficient to sustain itself and fails the pleading standard. It should be dismissed.

## II. MEMORANDUM OF POINTS AND AUTHORITIES

### A. Factual and Procedural Background

In sum, the Complaint stems from Plaintiff's subjective belief that his own insurance company should have offered him more money for the alleged damages he opines that his home sustained during a hail storm. The Complaint alleges that Travelers originally only offered him $2,310.85. Although Travelers eventually substantially raised its coverage offer, Plaintiff alleges that all of Travelers' offers were far below what he believes he is owed. *See* Complaint *generally*.

Pertinent to this Motion is that the Complaint alleges that Travelers hired J.S. Held, an appraiser, to assist in providing Plaintiff another "lowball" offer to his claim. *Id.* at ¶ 32. Plaintiff then claims that Travelers took the position that some of the alleged hail damage was actually just normal wear and tear/deterioration caused by oxidation. The Complaint alleges that Travelers reached this decision based, in part, by J.S. Held's appraisal. *Id.* at ¶¶ 40, 46. As a result, Plaintiff elected to sue not only its insurance company, Travelers, but confusingly the appraiser that Travelers hired.

Plaintiff's Complaint asserts against Travelers a claim for breach of the duty of good faith and fair dealing and tortious bad faith claims handling. *See id.* at ¶¶ 75, 85. As against J.S. Held, Plaintiff's Complaint alleges that it aided and abetted Travelers' failure to properly investigate the property and provided a "lowball" offer to settle

Plaintiff's claim. *See id.* at ¶ 95. This is despite the fact that, again, J.S. Held is not Travelers' adjuster and is simply a third-party appraiser hired by Travelers.

Plaintiff originally filed this lawsuit in the Maricopa County Superior Court, case no. CV2020-005317. Travelers noticed the removal of Plaintiff's Complaint on June 2, 2020. (Doc. 1). On June 18, 2020, Plaintiff filed a Motion to Remand (Doc. 9). Regardless of whether this Court retains jurisdiction, the claim against J.S. Held cannot survive scrutiny and should be dismissed.

**B. Legal Argument**

**i. <u>Arizona State Courts Do Not Recognize Aiding and Abetting Claims Against an Insurance Company's Agent.</u>**

Arizona Courts consistently hold that independent adjusters, hired by insurance companies, owe no duties to the insured and cannot be liable for negligence in connection with investigating claims. *See Meineke v. GAB Business Services, Inc.*, 195 Ariz. 564, 568, 991 P.2d 267, 271 (Ct. App. 1999). The reason for this is obvious.

As the *Meineke* case noted, to impute liability to an independent adjuster *hired by the insurance company, to render services only to the insurance company* would work a "fundamental change in the law" because "the law of agency requires a duty of absolute loyalty of the adjuster to its employer, the insurer." *Id.* The *Meineke* court further noted, if the insured believes that its insurance company mishandled a claim, its recourse is to sue the insurance company for bad faith. *Id.* And if any actions on the part of the independent adjuster were improper, such actions would be subsumed by the claim because its actions are imputed to the insurer. *See id.*

The logic here is the exact same. To the extent that J.S. Held assisted Travelers in rendering the decision with which Plaintiff takes issue, Plaintiff's recourse is to sue Travelers; not the independent appraiser hired by it. If something was amiss in J.S. Held's appraisal, and Travelers relied on it in rendering its coverage decision, that is an

issue between Travelers and J.S. Held. But the ultimate alleged harm stemmed from a decision that was wholly outside the control of J.S. Held, and wholly within the control of Travelers, to make. Yet under Plaintiff's logic, an appraiser would *always* be at risk of a suit by a person, to whom it owes no duty, solely for performing its contractual obligations to its insurance client, should the insurance company choose to make an unfavorable coverage decision for its client. This relationship is far too attenuated to pass muster.[1]

Persuasive District Court decisions support this outcome. In *Jimenez v. Progressive Casualty Insurance*, 2016 WL 5858738 at *5 (D. Ariz. 2016) the Court was confronted with similar facts similar to this case. In *Jimenez,* the plaintiff sued Coventry for "aiding and abetting" the alleged bad faith committed by plaintiff's insurance company, Progressive. Coventry operated a Preferred Provider Organization ("PPO") through which medical providers accept discounted rates as a condition of their participation. *Id.* at *1. Coventry marketed its bill review services to Progressive and other auto insurers as a tool to "reduce auto related medical expenses." *Id.* Coventry and Progressive entered into an agreement by which reduced billing rates would be applied to med pay claims. The Court acknowledged that Coventry was "directly involved in claims processing through their providing of their rates in direct response to requests from Progressive." *Id.*

Just as the Complaint in this case alleges, as support for plaintiff's aiding and abetting claim against Coventry, the plaintiff in *Jiminez* alleged that Coventry knew Progressive would use Coventry's billing rates to reduce its payments to medical providers, and in fact marketed its services to Progressive for that purpose. *Id.* at *5. *See also Complaint* at ¶¶ 32, 97. The Court aptly noted that did not save the claim. *Id.* at *5

---

[1] Indeed, the Maricopa County Superior Court has recognized the same logic applies to a claim for "civil conspiracy" as between J.S. Held and the insurer who retains it to become an appraiser. *See* attached **Exhibit A**.

("However, apart from conclusory allegations that Coventry knew Progressive would use those rates to 'reduce the payments of legitimate Med Pay claims,' the SAC contains no allegations to support Jimenez' claim that Coventry knew Progressive's activity was tortious.").

Perhaps most importantly, and analogous to this case, the *Jimenez* Court noted that at most, the circumstances presented by the plaintiff's complaint alleged that Coventry knew Progressive was breaching its contractual duties to insureds. *Id.* And the Court further concluded that Arizona law does not appear to recognize "aiding and abetting a breach of contract." *Id. (citing R. Prasad Indus. v. Flat Irons Envtl. Solutions Corp.*, No. CV 12-8261-PCT-JAT, 2013 WL 2217831, at *8 (D. Ariz. May 20, 2013). Accordingly, the Court found that plaintiff's claim could not survive a motion to dismiss.

*Jiminez* is on-point. J.S. Held had a contractual duty to Travelers. Travelers has a contractual duty to Plaintiff through its policy of insurance. To the extent Travelers utilized J.S. Held's services in making any decisions related to its obligations to Plaintiff, that is between Plaintiff and Travelers alone. J.S. Held cannot be held liable for what is effectively an aiding and abetting breach of contract claim, even if, assuming Plaintiff is correct it knew that Plaintiff planned to rely on its services.

This is even further supported by other District Courts cases, which have held that aiding and abetting claims brought against an insurance company's agent are not formally recognized under Arizona law in the state courts. *See Lambert v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-00521-JWS, 2014 WL 5432154, at *3 (D. Ariz. Oct. 24, 2014) ("[W]hether Arizona would recognize such a tort remains unclear."). Importantly, the only instance where an Arizona state court provided any actual analysis into the existence of such a claim found that Arizona law <u>prohibits</u> such claims. *See Bennett v. Insurance Co. of State of Pennsylvania*, No. 1 CA–CV 10–0815, 2012 WL 424913, at *8 (Ariz. Ct. App. Feb. 9, 2012).

In *Bennett*, the court determined that the duty of an insurer to act in good faith is non-delegable; therefore, an agent and its principal act as "one entity" and thus it could not assist itself in aiding and abetting tortious conduct. *Id.* at ¶¶ 33-35. Thus, the court of appeals affirmed the superior court's grant of summary judgment against the insurance company's agent. *Id.*; *see also Young v. Liberty Mut. Group, Inc.*, No. CV-12-2302-PHX-JAT, 2013 WL 840618, at *3 (D. Ariz. Mar. 6, 2013) ("In order for there to be harm to a 'third person,' there must be at least two tortfeasors.") (*citing* Restatement (Second) of Torts § 876 cmt. A (1977).

As the only state authority with any actual analysis into whether a claim of the type Plaintiff is asserting against J.S. Held even exists, *Bennett* case is persuasive, instructive, and should guide this Court. *See Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989) (holding that federal courts defer to state court's interpretation of state law unless that interpretation is untenable), *cert. denied,* 493 U.S. 942 (1989). Indeed, it should not be overlooked that Plaintiff's aiding and abetting claim against J.S. Held was originally filed in state court before Travelers removed it – and now Plaintiff has filed a motion to remand it back to state court, making clear its preference for litigating there. Accordingly, the Court should look to the principles set forth in *Bennett* decision, apply them to this case, and dismiss Plaintiff's claim against J.S. Held.

**ii. <u>Plaintiff's Claims Fail to Satisfy all of the Aiding and Abetting Elements</u>**

Another independent reason to dismiss Plaintiff's claim against J.S. Held is because Plaintiff has failed to satisfy the second and third elements necessary to support an aiding and abetting claim. Claims for aiding and abetting tortious conduct requires proof of three elements: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage

the primary tortfeasor in the achievement of the beach. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395*, 201 Ariz. 474, 485, ¶ 34, 38 P.3d 12, 23 (2002).

**a. Plaintiff fails to demonstrate Defendant knew that Defendant Travelers' conduct constituted a breach of duty.**

The second element required to state an aiding and abetting claim requires an allegation that the defendant knew that the primary tortfeasor's conduct constitutes a breach of duty. *Wells Fargo Bank*, at 201 Ariz. at 485, ¶ 34, 38 P.3d at 23. While such knowledge may be inferred from the circumstances, "an inference of knowledge will not be made lightly." *Federico v. Maric*, 224 Ariz. 34, 36, 226 P.3d 403, 405 (Ct. App. 2010). Therefore, a plaintiff is required to allege and prove that the defendant had actual knowledge that its conduct was aiding and abetting another's tort; thus, it is insufficient for the plaintiff to allege that the defendant merely should have known of the primary tort. *See Dawson v. Withycombe*, 216 Ariz. 84, 103, ¶ 52, 163 P.3d 1034, 1053 (Ct. App. 2007). To do otherwise would impermissibly require a court to "pile inference upon inference, which stretches the evidence presented beyond the bounds of circumstantial evidence." *Id.*

Plaintiff's Complaint provides only threadbare accusations against J.S. Held, all of which are based upon a mere speculative "information and belief," which requires this Court to make large leaps and bounds of unsupported inferences. *See Taylor v. Reliance Standard Life Ins.*, 2011 WL 62142 *1 (D. Wash. 2011) (General allegations that "upon information and belief" a defendant breached its fiduciary duties to plaintiff insufficient to withstand motion to dismiss). *See also Dean v. Allred*, 2014 WL 231992 *4-5 (D. Ariz. 2014) (citation omitted) ("In the post-Twombly and Iqbal era, pleading on information and belief, without more, is insufficient to survive a motion to dismiss for failure to state a claim.").

Specifically, Plaintiff alleges that J.S. Held **"*upon information and belief…*** J.S. Held had at least a **general understanding** of the duties owed by an insurance carrier such as Travelers and he acted to substantially assist Travelers in its attempt to minimize or 'lowball' the Claim." *See* Complaint at ¶ 92 (emphasis added). Additionally, Plaintiff sets forth the completely unsupported inference that:

> Upon information and belief, J.S. Held and Loucado knew that the conduct of Travelers . . . constituted a breach of the duties owed by Travelers to Plaintiff; in part, **this is based on the understanding that both [Defendant] and Loucado routinely assist and work with insurance carriers like Travelers on insurance claims like the one at issue here**.

*See id.* at ¶ 97 (emphasis added).

Plaintiff's allegations that it believes J.S. Held had a "general understanding of the duties owed by an insurance carrier such as Travelers" and that it knew that Travelers' conduct constituted a breach "on the understanding" that both J.S. Held and its agent "routinely assist and work with insurance carriers like Travelers on insurance claims like the one at issue here" are exactly the type of unsupported inferences against which the *Federico* court cautioned to determine whether a sufficient allegation of actual knowledge has been made. And, the *Jimenez* Court found almost identical allegations to be insufficient to withstand Rule 12 scrutiny. *Jimenez,* 2016 WL 5858738 at *5.

Plaintiff's inability to allege J.S. Held's knowledge is apparent from the fact that nowhere in the ninety-eight (98) paragraph Complaint is it alleged that J.S. Held ever even saw Plaintiff's insurance policy, much more, that it knew what Travelers' duties to Plaintiff under it were. Yet Plaintiff asks this Court to infer J.S. Held's knowledge of that policy based on the conclusory and unsupported assertion that it routinely assists and works with insurance carriers. Apart from this being woefully inadequate to state a claim, it ignores the practical reality that insurance policies vary greatly in terms, and there are no allegations that J.S. Held knew or could have possibly known the terms of Plaintiff's policy.

This same folly is repeated with Plaintiff's claim that Travelers' bad faith "lowballing" occurred as a result of Travelers' decision not to include certain items in its insurance proposal. *See* Complaint at ¶¶ 40-43, 45, 52-53, 65-67, 75-76, 84-85. Again, Plaintiff fails to connect Travelers' knowledge of the specifics of Plaintiff's insurance policy, and what it covers and does not cover, to J.S. Held except to allege that it *believes* J.S. Held is generally aware of how these insurance policies are created, and, thus, that it somehow knew that Travelers failed to include everything it allegedly should have in its assessment of Plaintiff's loss. As stated above, insurance policies vary from company to company in terms of coverage, terms, and exclusions.

Notably, it appears that Plaintiff's insurance policy had at least one special provision that one would need to know if it could even theoretically aid and abet a bad faith refusal to cover. *See* Complaint at ¶ 57 ("The Policy issued by Travelers to Dr. Ward does not have what is referred to in the insurance industry as a cosmetic damage endorsement. Thus, while the hail damage to the disputed items was actual damage, not just hail splatter, even if it was just hail splatter, that is still covered damage under the Policy."). Unlike the aiding and abetting found in *Wells Fargo*, where by virtue of its relationship with Symington, the Bank had independent knowledge of whether the financial statement was fraudulent, the only way J.S. Held, a third-party independent consultant company, could possibly know of any bad faith "lowballing" is if Travelers advised J.S Held that it purposefully left certain required items out of its request for calculation. *See* 201 Ariz. at 479-82, ¶¶ 1-10, 38 P.3d at 17-20. No such allegations are pled. And, without even so much as an allegation that J.S. Held knew Travelers was purposely attempting to "lowball" Plaintiff by refusing coverage of certain items, Plaintiff is impermissibly requesting this Court pile inference upon inference.

This case is similar to *Federico*, where the court determined the plaintiff failed to properly demonstrate a defendant's knowledge in an aiding and abetting claim. *Federico*

*v. Maric*, 224 Ariz. 34, 226 P.3d 403 (Ct. App. 2010). In *Federico*, an insurance company retained a doctor to perform an IME on the plaintiff to determine whether the plaintiff required continued medical treatment. *Id. at* 35, ¶¶ 3-6, 226 P.3d at 404. The doctor determined that the plaintiff did not require continued medical treatment. *Id.*

When the plaintiff sued, it claimed, *inter alia*, that the doctor: (1) knew he was working for Liberty Mutual; (2) had done work for Liberty Mutual before; (3) knew that calling somebody a malingerer can have a negative connotation; (4) knew that opining that a claimant is moved by secondary gains can have a negative affect on their claim; (5) knew that his IME report would adversely affect the outcome of Federico's compensation claim; (6) prejudges patients he sees because he believes that the honest claims by legitimately injured people are settled and he never sees those people; (7) believes the people he sees are seeking monetary damages far beyond what is appropriate; (8) finds almost 60% of the people he sees are imagining their pain to make money from lawsuits; (9) believes that he sees a skewed population of patients; (10) finds that only about 3.7% of the people he performs IMEs on are truly injured; (11) believes that lawsuits drive the amount of care because that is how claimants' attorneys make more money; and (12) performed an inadequate medical examination of Federico. *Id.* at 37, ¶ 11, 226 P.3d at 406. The plaintiff even went so far as to allege that the doctor "knows or has a **general knowledge** that his IMEs will be used by Liberty Mutual for an improper purpose (i.e., the denial of claims in bad faith)." *Id.* at ¶ 12 (emphasis added). Despite all those allegations, the court determination affirmed the superior court's ruling, finding that Plaintiff's claim "lack[ed] any evidence to support even the inference of knowledge by [the doctor]." *Id.* at ¶ 13.

Even in *Federico*, where the plaintiff provided far more flesh on the bones to its aiding and abetting claim when compared to Plaintiff's in this case, it did not save the claim. Plaintiff's allegation in this case that J.S. Held has a "general understanding" of

Travelers' duties because it "routinely assists and works with insurance carriers like Travelers on insurance claims like the one at issue here," suffers from the same flaw as the plaintiff's claims in *Federico.* As such, the actual knowledge element is not satisfied sufficient to sustain his claim. *Id.* ("Even if we accept all of these allegations as true, none of them suggests in any way that [the doctor] had knowledge of Liberty Mutual's intent or even propensity to act in bad faith toward Federico's claim."). *Id.* at ¶ 11.

When distilled, Plaintiff's only real support for the aiding and abetting claim against J.S. Held is his subjective belief that any time Travelers hires J.S. Held, and Travelers does not pay out every dime an insured believes it is entitled, J.S. Held must have necessarily aided and abetted it in acting in bad faith. *See id.* at ¶ 12. Such a proposition is the very reason unsupported inferences such as the one Plaintiff requests the Court make here are insufficient to establish the requisite knowledge element of aiding and abetting. The claim should be dismissed.

**b. Plaintiff fails to demonstrate that Defendant substantially assisted or encouraged Defendant Travelers in the achievement of a breach.**

The third element a plaintiff must satisfy to bring a claim for aiding and abetting is to prove that a defendant substantially assisted in achievement of the tortfeasor's breach. *Wells Fargo*, 201 Ariz. at 485, ¶ 34, 38 P.3d at 23. This requires a party's separate action from the primary tortfeasor. *See Timmons v. ELCO Admin. Servs.*, No. CV-13-00846-PHX-PGR, 2013 WL 5242995, at *2 (D. Ariz. Sept. 17, 2013) (the third element "requires the secondary tortfeasor to have committed a separate tortious act in concert with the primary tortfeasor."). With respect to this element, Arizona district courts have repeatedly dismissed aiding and abetting claims where the actions of a defendant's agent significantly, if not entirely, overlapped with the actions alleged as the basis for the bad faith claim. *See Young v. Liberty Mut. Group, Inc.*, No. CV12-2302-PHX-JAT, 2013 WL 840618, at *3 (D. Ariz. Mar. 6, 2013) (no separate tortious act, insurer and adjuster alleged to have failed to conduct an adequate investigation and unreasonably denied

payment; also, adjuster could not know that insurer's actions breached duty because insurer took no action); *Jones v. Colo. Cas. Ins. Co.*, No. 12-1968-PHX-JAT, 2013 WL 4759260, at *2-3 (D. Ariz. Sept. 4, 2013) (finding a secondary act is required to aid and abet a primary act), *and Ortiz v. Zurich Am. Ins. Co.*, No. CV-13-02097-PHX-JAT, 2014 WL 1410433, at *3-5 (D. Ariz. Apr. 11, 2014) (no separate tortious act, insurer and adjuster alleged to have committed the same acts); *Lemaster v. Hartford Ins. Co. of the Midwest*, No. CV-13-02017-PHX-JJT, 2016 WL 705125, at *10 (D. Ariz. Feb. 23, 2016) (same), *and Lambert v. Liberty Mut. Fire Ins. Co.*, No. 2:14-cv-00521-JWS, 2014 WL 5432154, at *3 (D. Ariz. Oct. 24, 2014) (adjuster's actions were the breach of duty not substantial assistance to another's breach); and *Rosso v. Liberty Ins. Co.*, CV-16-00860-PHX-DLR, 2016 WL 4013614, at *2-3 (D. Ariz. July 27, 2016) (same).

The same holds true here, where Plaintiff's allegations against Travelers for breach of its duties are the same allegations against J.S. Held. As stated above, Plaintiff's Complaint alleges that Travelers breached the duty of good faith and fair dealing and engaged in tortious bad faith claims handling, stemming from Traveler's alleged failure to properly investigate the property and providing Plaintiff a "lowball" offer to settle Plaintiff's claim. *See* Complaint at ¶¶ 75, 85. The purportedly impermissible "lowballing" occurred as a result of Travelers' own decision not to include certain items in its insurance proposal or properly investigate the property. *See* Complaint at ¶¶ 40-43, 45, 52-53, 65-67, 75-76, 84-85. However, Plaintiff impermissibly relies upon the same allegations of failure to properly investigate the property and providing a "lowball" offer to Plaintiff as support for its aiding and abetting claim against Defendant. *See* Complaint at ¶¶ 32, 40, 46, 62-63, 75-76, 85, 95.

Plaintiff's aiding and abetting claim must fail because a plaintiff cannot argue that the same acts that gave rise to the tort also aided and abetted that tort. In short, Plaintiff claims only two tortious acts – failing in bad faith to conduct an adequate investigation

and provide a full settlement offer on Plaintiff's claims. This is exactly the type of impermissible merging that the district court has repeatedly dismissed, and this Court should so order here. *See Timmons*, 2013 WL 5242995, at *2 (granting defendant's motion to dismiss after finding that "Plaintiff's aiding and abetting claim fails because it 'alleges only one tortious act: failing, in bad faith, to conduct an adequate investigation and make timely benefit payments."'). The claim should be dismissed.

## III. CONCLUSION

For the foregoing reasons, J.S. Held requests this Court dismiss Plaintiff's claims against J.S. Held. If the Court grants this Motion, J.S. Held reserves the right to request its attorneys' fees and costs under A.R.S. §§ 12-341.01 and 12-341 as this case arises out of an insurance contract dispute.

Dated this 22nd day of June, 2020.

**CLARK HILL PLC**

By: *s/ Sean M. Carroll*
Sean M. Carroll
Christopher T. Curran
*Attorneys for Defendant J.S. Held LLC*

**CERTIFICATE OF CONFERRAL**

The undersigned hereby certifies that, pursuant to D. Ariz. L.R.Civ. 12.1(c), that the Defendant notified the Plaintiff of the issues asserted in the foregoing motion. The Plaintiff did not agree to file an amended pleading. Thus, the Defendant and Plaintiff were "unable to agree that the pleading was curable in any part by a permissible amendment offered by the pleading party." *Id.* Because the Plaintiff so refused, the Defendant was compelled to file this motion.

**CLARK HILL PLC**

By: *s/ Sean M. Carroll*
Sean M. Carroll
Christopher T. Curran
*Attorneys for Defendant J.S. Held LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 22nd day of June, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Service of Electronic Filing to the following CM/ECF registrants:

Michael N. Poli
Lawrence R. Moon
POLI, MOON & ZANE, PLLC
2999 North 44th Street, Suite 325
Phoenix, AZ 85018
mpoli@pmzlaw.com
lmoon@pmzlaw.com
*Attorneys for Plaintiff*

Amy L. Stein
Amy M. Samberg
FORAN GLENNON PALADECH PONZI & RUDLOFF PC
One Arizona Center
400 East Van Buren Street, Suite 550
Phoenix, AZ 85004
astein@fgppr.com
asamberg@fgppr.com

*s/ Joyce Johnston*