Sean M. Carroll (SBN 027171)
Christopher T. Curran (SBN 032583)
**CLARK HILL PLC**
14850 N Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Email: scarroll@clarkhill.com
ccurran@clarkhill.com
*Attorneys for Defendant J.S. Held LLC*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jeffrey Ward,<br><br>Plaintiff,<br><br>v.<br><br>Travelers Personal Insurance Company, a Connecticut corporation; J.S. Held, LLC, a Delaware limited liability corporation; and David Loucado and Jane Doe Loucado, husband and wife,<br><br>Defendants. | Case No.: 2:20-cv-01079-SPL<br><br>**DEFENDANT J.S. HELD LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

Defendant J.S. Held LLC ("J.S. Held" or "Defendant") hereby responds in support of its Motion to Dismiss (Doc. 10). Plaintiff's Response to Motion to Dismiss (Doc. 16) ("Response") should be summarily disregarded because it was untimely filed without leave of the Court while both Defendant's Motion for Summary Adjudication (Doc. 13) and Plaintiff's Motion for Enlargement (Doc. 15) were pending. Even should the Court consider it, an outcome other than dismissal is not dictated. Indeed, it cannot be disputed that the only Arizona state court case with any real analysis regarding Plaintiff's fundamentally flawed claim for aiding and abetting first party insurance bad faith against

Defendant provides persuasive guidance that such a claim does not and logically cannot exist. Notwithstanding, even if this Court is inclined to believe that such a claim might exist, Plaintiff's claim nonetheless fails because the facts as alleged in the Complaint cannot support the elements of the cause of action. Defendant's Motion to Dismiss should be granted.

## I. INTRODUCTORY NOTE

At the outset, Plaintiff's ad hominem attack against defense counsel, claiming they displayed lack of candor, deserves addressing. It is as beyond the pale and unnecessary as it is factually incorrect. The attack is premised on two fundamental assertions: (1) Plaintiff's belief that Defendant's citation to *Bennett v. Ins. Co. of State of Pa.*, 2012 WL 424913 (Ariz. App. 2012) violates Rule 111, Ariz. R. Supreme Court; and (2) that Defendant cited it without "disclosing in the MTD that *Bennett* is an unpublished memorandum decision" and that "the MTD contends that *Bennett* is the 'only' state authority on the issue.' MTD, Doc. 10 at 6:9-10." (*See* Doc. 16 1:24-27; 2:1-2).

First, for all the reasons set forth in Defendant's Response to Motion to Strike (Doc. 19), the citation to *Bennett* is proper. Second, the Court can plainly see that Defendant identified Bennett as "persuasive" and the only state court case that provides any real analysis on the issue at hand. (Doc. 10 at 6:10).

Equally misleading is Plaintiff's accusation that Defendant cited *Meineke v. GAB Bus. Servs., Inc.*, 195 Ariz. 564 (Ct. App. 1999) as controlling authority "without explicitly mentioning that *Meineke* did not involve an aiding and abetting claim at all" and that "the issue in *Meineke* was whether a carrier's independent adjuster could be sued for negligence." (Doc. 10 at 2:9-11). Plaintiff's argument is particularly confusing because Defendant's Motion clearly states "Arizona Courts consistently hold that independent adjusters, hired by insurance companies, owe no duties to the insured and

<u>cannot be liable for negligence in connection with investigating claims</u>." Motion to Dismiss at 3:10-14 (emphasis added).

As the Court well knows, candor is an obligation incumbent on all parties and counsel. If anything on this docket toes the line of the obligation, it is Plaintiff's cherry-picking and out-of-context citations. Regardless, Plaintiff's invectives cannot salvage their legally defective claim against Defendant, which should be dismissed.

## II. LEGAL ARGUMENT

### A. <u>Arizona Cases Have Denied Aiding and Abetting Claims Like the One Here</u>.

As argued in the MTD, *Bennett* is the best indicator that Arizona state courts view aiding and abetting claim against an insurance carrier's agent as improper. *See Bennett*, 2012 WL 424913 at *8, ¶¶ 31-35 (finding there is no legal distinction between a principal and its agent in this context, therefore, the aiding and abetting claim failed). This should guide the Court.

Alternatively, Plaintiff contends that the Court should look at *Lipsky v. Safety Nat'l Cas. Corp.*, 2017 WL 443525 at *7 (Ariz. App. Feb. 2, 2017) to fend off the import of *Bennett.* But *Lipsky* is of no consequence and provides no meaningful insight into whether an aiding and abetting claim is permitted in Arizona under the circumstances in this case. Because the parties failed to raise the issue of whether aiding and abetting was proper at all, the only relevant issue the *Lipsky* court addressed was whether Plaintiff could satisfy the bare elements of such a claim for aiding and abetting in the abstract. Therefore, *Lipsky* provides no assistance on whether Plaintiff's aiding and abetting claim is immediately defective; rather, the Court can and should examine the persuasive authority found in *Bennett.*

It is true that the *Chukly* court concluded that "the Arizona Court of Appeals and this Court both have reached divergent results in factually similar cases." *Chukly v.*

*American Fam. Mut. Ins. Co.*, 2017 WL 5952759 at *4; *see also Lambert v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-00521-JWS, 2014 WL 5432154, at *3 (D. Ariz. Oct. 24, 2014) ("[W]hether Arizona would recognize such a tort remains unclear."). But that does not cut in favor of Plaintiff. This Court can look to the threadbare allegations asserted against Defendant and reach is own determination that the claim asserted in this case is, at most, a blemish on the docket. *See also Ortiz v. Zurich American Ins. Co.*, 2014 WL 1410433 at *5 (D. Ariz. 2014) (rejecting plaintiff's aiding and abetting claim because "[t]he Court is not bound by the holdings in *Haney, Inman, or Wilson*, and the Court finds the reasoning in *Jones* and *Young* more persuasive. A single actor cannot substantially assist or encourage her own acts. . . Plaintiff alleges only one tortious act: failing, in bad faith, to conduct an adequate investigation and make timely benefits payments. Plaintiff fails to allege any separate action by [defendants] in concert with the action giving rise to Plaintiff's bad faith claim against [plaintiff]."). (internal citation omitted) (emphasis added).

In short, even if there is a split within this District, it does not benefit Plaintiff as Plaintiff contends. Instead, it affords this Court the freedom to perform its own sophisticated analysis, taking into account the only state court decision that provides any meaningful analysis into whether an attenuated third-party can aid and abet an insurance company's decision to deny or reduce coverage to its insured: *Bennett*. And *Bennett* stands for the proposition that no such claim exists.

**B. The Aiding and Abetting Allegations are Insufficient under *Wells Fargo*.**

Even should the Court determine that the claim does exist, Plaintiff's claim against Defendant still fails. A plaintiff alleging aiding and abetting must satisfy three elements in order to be successful: (1) the primary tortfeasor must commit a tort that causes injury to the plaintiff; (2) the defendant must know that the primary tortfeasor's conduct constitutes a breach of duty; and (3) the defendant must substantially assist or encourage

the primary tortfeasor in the achievement of the beach. *Wells Fargo Bank v. Arizona Laborers, Teamsters and Cement Masons Local No. 395*, 201 Ariz. 474, 485, ¶ 34, 38 P.3d 12, 23 (2002). The Complaint does not contain allegations that, even if taken as true, would satisfy the second and third elements.

**i. Plaintiff's Complaint fails to demonstrate Defendants' knowledge of any tortious conduct by Defendant Travelers.**

Plaintiff's Complaint fails to demonstrate that its allegations satisfy the knowledge element required to demonstrate aiding and abetting. While such knowledge may be inferred from the circumstances, "an inference of knowledge will not be made lightly." *Federico v. Maric*, 224 Ariz. 34, 36, 226 P.3d 403, 405 (Ct. App. 2010). Therefore, a plaintiff is required to allege and prove that the defendant had the knowledge that its conduct was aiding and abetting another's tort; thus, it is insufficient for the plaintiff to allege that the defendant merely should have known of the primary tort. *See Dawson v. Withycombe*, 216 Ariz. 84, 103, ¶ 52, 163 P.3d 1034, 1053 (Ct. App. 2007).

Nowhere in the Complaint is it alleged that Defendant had an iota of knowledge that Travelers' coverage decision amounted to a breach of its duty to Plaintiff. It is not enough for Plaintiff to rely on the conclusory assertion contained in Paragraph 92 of the Complaint, which vaguely alleges that Defendant, through its employee Loucado, had a "general understanding of the duties owed by an insurance carrier such as Travelers." *See* Complaint at ¶ 92. Equally unavailing is Plaintiff's purely speculative allegation contained in Paragraph 97, which states:

> Upon information and belief, J.S. Held and Loucado knew that the conduct of Travelers . . . constituted a breach of the duties owed by Travelers to Plaintiff; in part, <u>**this is based on the understanding that both [Defendant] and Loucado routinely assist and work with insurance carriers like Travelers on insurance claims like the one at issue here**</u>.

*See id.* at ¶ 97 (emphasis added).

These allegations are not remotely sufficient to meet the element of aiding and abetting that Defendant, through Loucado, knew that Defendant Travelers' actions constituted a breach of any duty and constitutes a completely unsupported allegation that the Court need not give weight to. *See Dawson*, 216 Ariz. at 103, ¶ 52, 163 P.3d at 1053 (finding that plaintiff's allegations did not "rise to the level of scienter required for aiding and abetting, specifically that [the defendants] were *aware* that [tortious defendant] *did or would in fact* use fraudulent statements as a means of procuring the loan. To infer awareness of the fraudulent scheme . . . is to pile inference upon inference, which stretches the evidence presented beyond the bounds of circumstantial evidence.").

Tellingly, Plaintiff's Response takes great care to avoid Defendant's cited case, *Jimenez v. Progressive Casualty Ins.*, 2016 WL 5858738 at *5 (D. Ariz. 2016). In *Jimenez*, the Court made clear that, "However, apart from conclusory allegations that Coventry knew Progressive would use those rates to 'reduce the payments of legitimate Med Pay claims,' the SAC contains no allegations to support Jimenez' claim that Coventry knew Progressive's activity was tortious." *Id.* at *5. Here, the Complaint is deficient under *Jiminez* because it does not even so much as allege that Defendant even knew the parameters or language of Plaintiff's specific policy.

Yet another factually apposite case that Plaintiff wholly ignores from Defendant's Motion to Dismiss is *Federico v. Maric*, 224 Ariz. 34, 226 P.3d 403 (Ct. App. 2010). Plaintiff's allegations in this case are nearly identical to those aiding and abetting allegations in *Frederico*. In fact, the only differences between them are that the allegations in *Federico* had even more flesh on the bones than the skeletal allegations here. *See id.* at 37, ¶ 11, 226 P.3d at 406, (setting forth twelve separate allegations against defendant in support of its aiding and abetting claim for an insurer's allegedly tortious conduct). Indeed, the plaintiff in *Frederico* even went so far as to allege that the doctor "knows or has a **general knowledge** that his IMEs will be used by Liberty Mutual

for an improper purpose (i.e., the denial of claims in bad faith)." *Id.* at ¶ 12 (emphasis added). Notwithstanding, the *Frederico* court determined that the plaintiff's complaint was devoid of anything that could even support an inference of knowledge. *Id.* at 406-407, ¶¶ 12-13, 226 P.3d at 37-38.

When juxtaposing the allegations of this case with those that were inadequate to support aiding and abetting claims in both *Federico* and *Jiminez,* there is no room for doubt that Plaintiff's Complaint fails to adequately plead the knowledge element of aiding and abetting. It should therefore be dismissed.

**ii. Plaintiff's Response fails to demonstrate substantial assistance to Defendant Travelers.**

Plaintiff's Complaint also fails to properly allege that Defendant, through Loucado, provided substantial assistance to Travelers' breach of its duty to Plaintiff. Even if Arizona courts are split on whether separate conduct is required to satisfy this element, a slight majority of the cases in this District appear to require allegations of separate conduct in order to satisfy the substantial assistance element. *See Chukly*, 2017 WL 5952759 at *3 (aggregating cases which require separate conduct and those that do not); *see also Ortiz*, 2014 WL 1410433 at *3-5 (D. Ariz. 2014) (reviewing applicable cases and determining that "[t]o state a claim for aiding and abetting, Plaintiff must allege facts showing [defendants] took separate action in concert with the action giving rise to Plaintiff's claim against [tortious defendant]."). As set forth in its Motion to Dismiss, Plaintiff failed to allege separate actions. (*See* Doc. 10 at 11:14-13:6).

However, even if this Court rejects the need for separate action allegations, Plaintiff's claim of aiding and abetting still fails for the simple reason that none of Defendant's alleged actions could have substantially assisted Travelers' alleged tortious conduct. That is because the Complaint makes clear that Travelers' decision not to offer payment for hail damage to the stucco, garage doors, and roof occurred after it had a

catastrophe adjuster provide an inspection of the property at issue, and before it ever even retained Defendant. *See id.* at ¶¶ 16-27.

The third element necessary to properly allege aiding and abetting is that "the defendant must substantially assist or encourage the primary tortfeasor in the achievement of the breach." *Wells Fargo Bank*, 201 Ariz. at 485, ¶ 34, 38 P.3d at 23. Therefore, "[t]he test is whether the assistance makes it 'easier' for the violation **to occur**, not whether the assistance was necessary." *Id.* at 489, ¶ 54, 38 P.3d at 27 (emphasis added). The plain language of this element (and obvious logic) makes clear that one cannot aid and abet one in completing a tort that has already been committed. Plaintiff nonetheless attempts to do so here.

Even if all of Plaintiff's allegations relating to Defendant are taken as true, they occurred after Travelers' alleged offending actions took place. In particular, Plaintiff alleges that on or about November 15, 2018, after having the property inspected by a catastrophe adjuster (importantly, *not* Defendant *or* its employee, Loucado), Defendant Travelers determined that the total replacement cost value of Plaintiff's claim was $2,310.85 (the "11/15/18 Travelers Estimate"), which constituted a "lowball" estimate. *See* Complaint at ¶¶ 16-18. Plaintiff also alleges Travelers then adjusted its own estimate of damages to $16,463.85 in its April 9, 2019 estimate (the "4/9/19 Travelers Estimate"). *Id.* at ¶ 23. Plaintiff's Complaint also alleges that the 11/15/18 Travelers Estimate and the 4/9/19 Travelers Estimate both "ignored hail damage to the outside stucco of the home, which had a very high-end and expensive Tuscan finish." *See* Complaint at ¶¶ 26-27. Finally, Plaintiff alleges that in *September 2019* (almost a year *after* the Travelers Estimates) Travelers retained Defendant and Loucado. *Id.* at ¶ 31.

Notably, neither the Complaint nor the Response even allege that Travelers' opinion or offer materially changed from the 4/9/19 Travelers Estimate after it retained Defendant. Travelers had already determined the amount it would pay to Plaintiff,

presumably based on its catastrophe appraiser's inspection,[1] for the alleged damage to the property in its 11/15/18 Travelers Estimate and the 4/9/19 Travelers Estimate. And those "lowball" offers were provided to Plaintiff long before it ever retained Defendant. *See id.* at ¶¶ 26-27. Accordingly, by the time Defendant arrived at the scene, Travelers' purported tortious conduct, failure to properly investigate and the resulting "lowball" offer, had already taken place. Any subsequent communications from Defendant Travelers allegedly relying upon JS Held or Mr. Loucado are immaterial as the tortious actions giving rise to Plaintiff's Complaint had already been committed. This is exemplified given the fact that Plaintiff could have brought the exact same action against Defendant Travelers after he was provided the 11/15/18 Travelers Estimate and/or the 4/9/19 Travelers Estimate. As such, it is a chronological impossibility for Defendant to have "substantially assist[ed] or encourage[d] the primary tortfeasor in the achievement" of a tort that had already purportedly occurred. *See Wells Fargo*, at 489, ¶ 54, 38 P.3d at 27. Plaintiff's aiding and abetting claim fails as a matter of law and the Complaint as to Defendant should be dismissed.

## III. <u>CONCLUSION</u>

For the foregoing reasons, J.S. Held respectfully requests this Court dismiss Plaintiff's claims against J.S. Held.

Dated this 15th day of July, 2020.

**CLARK HILL PLC**

By: *s/ Christopher T. Curran*
Sean M. Carroll
Christopher T. Curran
*Attorneys for Defendant J.S. Held LLC*

[1] Defendant notes that Plaintiff has chosen not to name the catastrophic appraiser as a defendant in this action. It is unclear to Defendant why that is so given Plaintiff's allegation that this adjuster allegedly inspected the property prior to the initial 11/15/18 Travelers Estimate.

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of July, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Service of Electronic Filing to the following CM/ECF registrants:

Michael N. Poli
Lawrence R. Moon
POLI, MOON & ZANE, PLLC
2999 North 44th Street, Suite 325
Phoenix, AZ 85018
mpoli@pmzlaw.com
lmoon@pmzlaw.com
*Attorneys for Plaintiff*

Amy L. Stein
Amy M. Samberg
FORAN GLENNON PALADECH PONZI & RUDLOFF PC
One Arizona Center
400 East Van Buren Street, Suite 550
Phoenix, AZ 85004
astein@fgppr.com
asamberg@fgppr.com

*s/ Joyce Johnston*