Sean M. Carroll (SBN 027171)
Christopher T. Curran (SBN 032583)
**CLARK HILL PLC**
14850 N Scottsdale Road, Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1100
Email: scarroll@clarkhill.com
ccurran@clarkhill.com
*Attorneys for Defendant J.S. Held LLC and David Loucado and Jane Doe Loucado*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Jeffrey Ward,<br><br>Plaintiff,<br><br>v.<br><br>Travelers Personal Insurance Company, a Connecticut corporation; J.S. Held, LLC, a Delaware limited liability corporation; and David Loucado and Jane Doe Loucado, husband and wife,<br><br>Defendants. | Case No.: 2:20-cv-01079-SPL<br><br>**JOINT NOTICE OF DISCOVERY DISPUTE**<br><br>**(Expedited Consideration Requested)** |

The Parties hereby submit their Joint Notice of Discovery Dispute ("Notice"). This Notice comes after the Parties' counsel met on July 27, 2020, for a meet and confer, but were unable to come to a resolution.

Defendants J.S. Held, LLC, David Loucado, and Jane Doe Loucado (the "Held Defendants") have grave concerns over the future of the property, located at 25036 N. 107th Way in Scottsdale, Arizona 85255 (the "Property"), that is the subject of Plaintiff Jeffrey Ward's ("Plaintiff") Complaint. Specifically, Plaintiff Jeffrey Ward recently disclosed that the Property is under contract for sale, and is scheduled to close on August 14, 2020. Plaintiff stated that he intends to modify or "repair" the Property, including portions that are at issue in this litigation, before the "seven-figure sale" closes.

Despite multiple pleas from the Held Defendants to allow this Court to address this issue before taking any irreversible action, Plaintiff's looming threat to alter the Property and the evidence of this case, effectively forced the Held Defendants to retain a consultant on a dime, and perform an inspection on less than a weeks' notice on July 28, 2020, while their Fed.R.Civ.P.12(b)(6) Motion is pending, before they have filed an Answer, and before the pending Motion to Remand has even determined which Court will entertain this action. To add insult to injury, it is not even clear whether the inspection was of any use to the Held Defendants, except to document what spoliation may occur between now and a follow up inspection.

Indeed, all that the Held Defendants know about Plaintiff's alleged damages are contained in his Complaint – a notice pleading document. Despite this, Plaintiff artificially forced all Defendants to reverse the order of discovery and skip to expert discovery, while defiantly refusing to reciprocate with any disclosures regarding the specifics of the damage at the Property that formulates the basis of his Complaint. Plaintiff refuses to produce an initial disclosure statement, any of Plaintiff's reports regarding the alleged damage for which he claims the Held Defendants are somehow liable for Defendant Travelers' insurance coverage decision, or even the Property buyer's inspection report (which Plaintiff claims is the basis upon which he is making repairs). Most concerning is that Plaintiff refuses to preserve the Property until such disclosures are made so to enable the Held Defendants to perform a thorough inspection that unmistakably examines all items of purported damage claimed by the Plaintiff.

In response to the Held Defendants' requests for disclosures and to preserve the Property, Plaintiff has now threatened the Held Defendants with claims for additional damages if the sale falls through because Plaintiff has an obligation to preserve his own evidence at the Property in the lawsuit that *he* voluntarily initiated. Plaintiff has manufactured a theoretical Catch -22 for the Held Defendants by: (1) requiring them to seemingly ignore Plaintiff's forthcoming spoliation so that he can sell his Property – presumably for a substantial profit – *and* simultaneously maintain this action (a dubious

proposition in its own right); or (2) face the threat of additional damages by requiring Plaintiff to preserve the Property until such disclosures are met.

Plaintiff's proposed course of action presents a very realistic probability, if not certainty, that Plaintiff will claim damages to items that were not inspected on July 28, because they are not apparent from the face of the Complaint, and yet are later repaired as part of the Property sale. This fear was only underscored by Plaintiff's counsel's comments during the meet and confer that Plaintiff's damages are related to the stucco, roof, garage doors, "and miscellaneous." No explanation for what "miscellaneous" means was provided. And notably, Plaintiff's Complaint alleges damage "to the structures on the Property and personal property on the premises." *See* Complaint at ¶ 12. Specifically, that other "personal property" appears to at least contain "outdoor kitchen items," "the swimming pool cover," "swimming pool related equipment," and "outdoor lighting." Complaint at ¶¶ 30, 34. None of those items were mentioned during the meet and confer or are sufficiently defined. The Held Defendants are legitimately concerned that the "miscellaneous" category of property damage described by counsel will serve as a catchall category of property damages that will only be disclosed *after* Plaintiff "repairs" it, and which Defendants had no ability to know about for lack of disclosure as a result of the premature July 28 inspection. This Court should not permit the Plaintiff to dictate how and when discovery should take place in this case; particularly, when it presents a serious risk of prejudicing the Held Defendants. The Court should order Plaintiffs to promptly identify, with binding specificity, the purported Property damage at issue in the Complaint, coupled with an evidence preservation order of reasonable duration that will allow a follow up inspection to occur, after all the items of damage are disclosed.

## PLAINTIFF'S POSITION

Plaintiff owns a seven-figure home in Troon that was damaged in an October 23, 2018 hailstorm. About a year after the insurance claim was submitted, Defendant Travelers Insurance hired Defendant JS Held to help support its position on the claim.

When the damage occurred, Dr. Ward was in the process of building another seven-figure home. His other home is now finished, and he needs to sell the Troon home, so that he is not carrying the cost of two homes. Starting on June 7, 2020, notice was given to all defense counsel of a possible sale, so they could schedule another inspection if they wished (both Defendants inspected the home as part of the claims process). From June 7 through Friday, July 24 (nearly seven weeks), dozens of emails were exchanged to set up an inspection, discussing a variety of different dates in June and July. **JS Held's counsel was on all of those emails and never raised any objection**. Plaintiff and Travelers agreed on July 28 for the inspection. Because the roof files are very delicate sand-cast tiles, and walking on them would cause significant additional damage, Plaintiff and Travelers agreed to split the cost of a man-lift to properly examine the roof without damaging more tiles (the expected cost was $2,000). When counsel for JS Held was asked if it would participate in this cost, suddenly, numerous objections were raised.

**The Expense Objection.** This dispute first arose right after JS Held was asked if it would split the cost of the lift ($2,000) with Plaintiff and Travelers (*i.e.*, less than $700). JS Held refused so we agreed to split the cost with Travelers.

**The Indefinite Preservation Issue**. According to the first in a series of emails on Friday, JS Held believes it is improper to have any inspection before the Rule 26(f) conference and before a formal exchange of disclosures. This would mean that Dr. Ward's sale of the Troon home could not proceed, since it is to close in mid-August. This could result in additional consequential damages.

**What to Inspect.** Starting on July 24, JS Held suddenly professed that it did not know what to inspect. This makes little sense. The hail damaged the roof and the stucco siding (the wood garage doors were also damaged but Travelers belatedly agreed to pay for those). JS Held knows what to inspect since it was hired by Travelers as a construction consultant to inspect the property. Moreover, there is a detailed estimate and damages recap from the insured's Public Adjuster, which JS Held necessarily must have had in order to do its job (and another copy was sent to JS Held's counsel).

**<u>The Offer to Let JS Held Inspect on Another Date</u>.** When JS Held said it could not inspect on July 28, we offered to make the property available on another date in the next week. But time was of the essence because of the mid-August closing, and because the buyer has demanded at least some repairs to the roof and the stucco. We also offered to split the cost of another lift with JS Held on a new date, even though our experts will (and did) use the lift scheduled for July 28. JS Held refused this option.

**<u>The Contrast Between Travelers and JS Held</u>.** Rather than raise any similar objections, Travelers cooperatively inspected the property.

**<u>The Last-Minute Change of Position</u>.** From July 24 on, counsel for JS Held and Plaintiff have been arguing over the above issues, including the contention that JS Held could not have an expert at the July 28 inspection. But when we received a new draft of this Joint Statement on the afternoon of July 28, we realized it had been changed to say that JS Held actually did have an expert attend the July 28 inspection. Our question then was, why are we troubling the Court with this matter? But JS Held wished to proceed. In summary then, the home is to be sold, an opportunity to inspect was offered beforehand, all parties cooperated for seven weeks, but then JS Held raised numerous objections at the last minute; one such objection was that it could not inspect on July 28, so we offered to let it inspect on another near-term date; but then JS Held actually did inspect on July 28. Plaintiff's position is that this dispute seems to be contrived.

## <u>TRAVELERS' POSITION</u>

Defendant Travelers has notified the other Parties that it has nothing more to add.

Dated this 30th day of July, 2020.

**CLARK HILL PLC**

By: *s/ Christopher T. Curran*
Sean M. Carroll
Christopher T. Curran
*Attorneys for Defendant J.S. Held LLC and David Loucado and Jane Doe Loucado*

**POLI, MOON & ZANE, PLLC**

By: *s/ Michael N. Poli (with permission)*
Michael N. Poli
Lawrence R. Moon
*Attorneys for Plaintiff*

**FORAN GLENNON PALADECH PONZI & RUDLOFF PC**

By: *s/ Amy M. Samberg (with permission)*
Amy L. Stein
Amy M. Samberg
*Attorneys for Defendant Travelers Personal Insurance Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of July, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and transmittal of a Notice of Service of Electronic Filing to the following CM/ECF registrants:

Michael N. Poli
Lawrence R. Moon
POLI, MOON & ZANE, PLLC
2999 North 44th Street, Suite 325
Phoenix, AZ 85018
mpoli@pmzlaw.com
lmoon@pmzlaw.com
*Attorneys for Plaintiff*

Amy L. Stein
Amy M. Samberg
FORAN GLENNON PALADECH PONZI & RUDLOFF PC
One Arizona Center
400 East Van Buren Street, Suite 550
Phoenix, AZ 85004
astein@fgppr.com
asamberg@fgppr.com

*s/ Deb Lukas*